Good morning. May it please the court, Scott Kornbaum on behalf of Dr. Farooq. When this matter was first brought to the district court's attention at the TRO hearing, HHC admitted that they suspended Dr. Farooq without pay. And if you look at the hearing transcript at Joint Appendix 102 and 103, you see the attorney for HHC, Ms. Kramer, talk about these very serious allegations of misconduct that were filed by another employee which required this immediate action. But Judge Swain, who had been assigned because Judge Furman I think was on vacation, said, just to be clear, she said, and you're saying, after hearing from Ms. Kramer, Judge Swain said, and you're saying, the charges haven't even been brought and there hasn't been a decision as to whether to bring charges, so that's where I'm getting confused. And Ms. Kramer said, correct. So you have, and then later on, Judge Swain correctly interprets HHC Rule 7.5.2 to require that a suspension cannot be put into effect before charges are served upon the employee. And HHC Rule 7.5.2 codifies the property interest that Dr. Farooq possessed because it quotes verbatim from Civil Service Law Section 75.3. And first, Section 75.1 gives rise to the property interest because it says that a protected employee shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges. And then Subdivision 3, again, which is, which HHC Rule 7.5.2 quotes verbatim, codifies, it says, pending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding 30 days. And as Judge Swain correctly interpreted this provision, you have to have, before the suspension without pay for the allotted 30 days can take place, you've got to have some charges. Now- So, Counselor, may I ask a question? One of the things that I was confused about is that in the complaint it is really hard to tell how much notice and what happened, how much process they got in that complaint or in the meeting in which it was explained and right before he got escorted out. So what I'm asking is are we obligated to infer that there was no process or did you fail to meet your burden of saying that whatever process was there was inadequate? I don't, well, I think reason, construing the complaint or the second amended complaint in a light most favorable to Dr. Farouk, as this court is required to do, you can see that he didn't get whatever conversations they had, which- Right, but wasn't it your burden to say that whatever conversation that happened wasn't sufficient? That that didn't meet the in that meeting, right? Well, we do because if you get to the complaint, they talk, well, you can, the second amended complaint talks about how there was an allegation, there was some conversation, but if you compare that to A, the charges, the letter provided to Dr. Farouk, that's JA 35, where they talk about an alleged act of misconduct that occurred on June 21st, right? And then if you compare them to the July 15th, 2019 letter, which not letter, but the specifications and charges, it would start at 138, but the charges themselves can be found at 140. You see that there's no June 21st letter talks about an alleged act of misconduct that occurred on or about June 21st. The charges themselves refer to a charge that occurred on November 9th, 2018, February 11th, 2019, February 15th, 2019, and June 27th, 2019. So we know that wasn't discussed at the June 21st meeting because it post dated it. And so you have in the second amended complaint, and I'll find it in a second. You have, if you look at 149, if you look at 138 and 149 of the joint appendix, you'll see that in HHC, the appellees press this argument that the July 15th, 2019 charges were those discussed at the June 21st, 2019 meeting. And that's just factually inaccurate. That is not reading the second amended complaint fairly. Just bear with me one second, Judge Perez. It's Perez. Perez, my apologies. Thank you. At 149, it says that Dr. Farouk was questioned about a number of different matters. Some of the questions related to the existence of expired medications and allegedly accessing unauthorized information about medication. That is nothing that one finds in the specifications and charges of July 15th, which is again at 140. So I think a fair reading of the second amended complaint says that those matters were not discussed at the June 21st meeting. I hope that answers your question. On your procedural due process claim, Dr. Farouk got back pay. So my understanding of what's left is in the briefing, there's a claim for, I guess, emotional distress and nominal damages. Is that right? That's what we're, that's what the relief you're seeking on that claim? And well, yes, emotional distress, compensatory damages and punitive. There's a claim for punitive damages as well, Judge Park. And so nominal damages, while not requested, but because there was request, a request for both compensatory and punitive damages, if the jury found, if a jury found that Dr. Farouk did not establish his entitlement to either compensatory or punitive damages, the default would be nominal damages, which are always available in a procedural due process. Compensatory and punitive for the being taken out of the office. Is that the part that you're It's not, you know, it's just in the idea. Why don't you direct, can you tell me where, or maybe in rebuttal, where in the complaint is you identify the relief you're seeking as to the due process claim? Because it seems to me that it's moot once you get the back pay. And I want to know why that's wrong based on what is alleged in the complaint. Sure. In the ad damnum clause, I don't have the site to the ad damnum clause. You'll see a request. Maybe it's not the ad damnum clause. May I do it in rebuttal? Yes, that's the next question. But I am confident that they are, that the second amended complaint pleads a request for loss, for damages, which would, which would encompass an ad damnum clause, right? I hope so. But if it is, but not in the complaint itself. It may be in the first claim for relief, I believe in the first claim for relief, which is the procedural due process clause where they request, where there's a request for punitive damages. And I think there's also a reference to where you see the problem that I think Judge Park is alluding to, at least that I'm alluding to, is that there has to be a deprivation of a property interest. The rule 75.3 says that you don't have to, you can suspend a person without pay for 30 days. He was suspended without pay for three weeks. Correct. And then he got everything back. So it's hard to see where there's a deprivation of a property interest here, which goes right to the heart of your due process claim. Well, he was deprived of that. No, but the city law says that that's okay. No, you're no judge. That's partially correct. Tell me. I want to be persuaded your way. Make your best argument. You are separating the, you can be suspended once charges have been preferred. Right. And they haven't been. When he is suspended without pay for three weeks, there have been no charges preferred. But what are the, what are the damages that he had? He sustained? No, he would be entitled to nominal damages. There's the claim for emotional distress damages as far as being walked out, you know, unceremoniously to be polite, you know, through by security in front of his coworkers. And then there's the claim for punitive damages, which puts this case. I guess I just to reiterate, I don't recall seeing nominal damages and you can tell me in rebuttal where that is. And on the being walked out part, I saw that as a factual allegation, not one as a claim for damages. It is. There's not a claim for nominal damages judge in the nominal damages does not appear in the second amended complaint. But as you know, this court's decision in Baya versus Coughlin, 789 Fed second, 986, but says that when compensatory and punitive damages are sought, then the claim is not moot. And again, nominal damages, um, taking nominal damage. I see my time. It's up. You can finish. Thank you, judge. Uh, nominal damages is often the default. It's really a jury instruction. When a, when a party is not seeking injunctive or declaratory relief, nominal damages have to be requested under this court's precedent in Fox versus the board of trustees of SUNY. In contrast, when the party is seeking, uh, compensatory and or punitive damages and the, and the judge will instruct the jury, no parties don't seek nominal damages when they're seeking additional damages, compensatory or punitive. And so as Bayon makes clear, uh, when the complaint is sought, nominal damages is sort of the default when, when the plaintiff fails to satisfy his or her burden of establishing an entitlement to actual damages. Okay. Thank you. You've reserved two minutes for rebuttal. Just remind me where, what I'm looking for during the, well, it sounds like you answered it. Yeah. I think you said, so I, um, unless there's something more you want to point us to the extent to which the pleadings, uh, show these, these other damages, including punitives. Sure. Thank you, judge. Uh, we'll hear from the city. Um, may it please the court. Can you hear me? Okay. Okay. Um, Antonella Carlin for HHC and the individual defendants. Um, to start with the due process claim, I think it's a bit of an interesting issue because you can see it one of two ways. Either the claim is moot, or you could say that he hasn't been deprived of a property interest because to the extent that he was suspended without pay, he was retroactively, uh, his salary was retroactively reinstated and he was provided with a formal notice of the charges. So on the one hand, the so there's no live controversy and he didn't see nominal damages, which is the only way that, uh, if, if he had expressly sought nominal damages, then obviously it would be a live controversy, but nothing in the complaint requests nominal damages. And I'm not sure where this idea that compensatory damages is the same as nominal damages. This court's precedent says you have to expressly request nominal damages. And the Supreme Court has said that compensatory damages and nominal damages are wholly distinct, um, remedies. So I would say that the claim is moot, but, um, in any event, it fails because he wasn't deprived of a protected property interest. Um, this court has never held that a short-term suspension- If the due process claim is moot, then we would have to vacate for dismissal without prejudice. Is that right? To allow for leave to amend? Well, because, because I think the district court dismissed, uh, with prejudice. And so you're saying that- Well, mootness is jurisdictional, so we would have to send it back with instructions to dismiss and it would be without prejudice, presumably. Is that right? I'm not sure, actually, because- Dr. Frueh could refile, I guess is- Yes. I think that's right. Yes. And he could request the nominal damages. Yes. Thank you. Um, so the claim also fails because, um, there's no protected property interest here. This court has never held that a short-term suspension without pay of less than 30 days implicates a protected property interest. And I think, um, the idea that the HHC rules that provide for formal notice, if you're going to suspend someone without pay, that that somehow turns it into a protected property interest, conflates the property interest with the process that's due. And the property interest is his salary, but there's no- I'm being suspended. And I don't think just because the HHC rules require formal notice, if they fail to do that, that doesn't mean that he somehow has a protected constitutional right. But, um, the claim also fails because he was provided with proper due process. He received a pre-suspension letter. He had a meeting during which, according to his complaint, the allegations against him were discussed. And he has full- a full-blown process for, uh, post-deprivate deprivation rights. Um, turning to the discrimination claims, bulk of the incidents alleged in the complaint aren't- weren't adverse employment actions. Really, I think the only thing was the suspension. And that fails because the complaint doesn't allege that it occurred under circumstances, giving rise to an inference of discrimination. Um, mostly, uh, the complaint seems to compare other Pakistani, uh, employees, who I think, um, Dr. Farooq believes were treated unfairly, but- Well, they didn't get the level three, uh, job. Yeah, so they're- But he did. Yeah, he's been a level three- He's not- he's not suing on behalf of himself. I'm sorry, I can't hear. He's not suing on behalf of himself, he's suing on behalf of other people. Yeah, so, and that- you can't do that for an individual discrimination claim. You need to show why you were treated unfairly. So, you have to compare yourself to others, not other Pakistani, uh, employees who you thought- Can I ask, though, what, um, what, if any, inference it's appropriate for us to draw from this kind of information? From the- With respect to other similarly situated persons, but all the, uh, in agreement with- with Judge Walker, not something that he experienced. So, do you mean, like, what kind of inference you can draw as to discrimination against Dr. Farooq personally? Exactly. I don't think any, I don't think the cases would allow for that, right? Because it- you have to show that an inference that the adverse employment action that was taken against you was motivated by discrimination against you, right? So, I don't think saying that other people were treated unfairly- But other people similarly situated, um, in conjunction with the allegations that he was targeted and the evidence that he provided with respect to, uh, the critique of his language usage and the like. Well, so, I think that's a separate issue, but, uh, I don't think they're similarly situated because he talks about some Pakistani employees who were overlooked for promotions that he himself already has and has had since 2010. And, I mean, I take your point that you- if- if there are, like, 10 Pakistani pharmacists and they're all being treated unfairly as compared to- that- that in the context, that gives context to the complaint, right? But here, there's nothing specific to an inference of discrimination against him. Well, more specifically, it's a- it's a separate question of, like, what the adverse action is, right? Because he's not claiming he didn't get promoted, but someone else did. And so, I'm trying to keep those separate and just, uh, asking if it is your position that there's no inference that we're supposed to be drawing from that. From this specific stuff with regards to the other Pakistani employees, I think no. There is- you can't draw any inference from them. And it's just not of any probative value at this point. But the- the emails, I think, is a separate question. And, uh, there's no inference of discrimination because on their face, or at least what his, uh, in the complaint, what he says the email said, it's facially neutral. And I think there's, um- I can't remember. There's a Sixth Circuit case that I think explains this distinction quite well. And the comments about a person's writing skills as opposed to maybe someone's accent, right, that doesn't implicate a person's national origin. And so, just standing on its own as it's facially neutral, it doesn't- there's no inference of discrimination that you can draw from such comments. Um, so, I- that's really all that's in the complaint. So, I would say that, uh, discrimination claims, uh, the district court correctly dismissed the And then finally, with the retaliation claim, um, at the outset, the, uh, Farouk tries to rely on this letter from April 2019, um, which was not- according to the complaint, was not sent on his behalf. And the district court actually had, uh, quite a long discussion about this at the hearing. And Farouk had said that it was an oversight. And so, the district court said when- when he asked him about it, he was very- What was the oversight? The oversight was that he- he wasn't- it wasn't represented in the letter that he was- that he was- he was being represented by the writer? I- I think, yeah, I think when he said oversight, he meant that the letter was on his- the lawyer sent the letter also on his behalf. And that it was an oversight that he didn't put that in the complaint, maybe. But then when the district court actually asked about it, um, according to the district court, Farouk was very careful to avoid associating himself with the April 30th letter. Um, and then the court actually said, well, if it was an oversight, then the remedy is that you seek leave to amend the complaint. And he expressly declined to do so. So at this point to say it was an oversight, it just rings hollow. So what remains is the allegations relate to his internal complaint from January 2019. And really all that he has to show that his suspension was in retaliation for the complaint is temporal proximity. And, um, to the extent that temporal proximity standing alone can ever establish causation, the time- the gap must be pretty close. And the six-month time gap here is way too attenuated under this court's own precedent. And unless you have any further questions for me, we're happy to rest on our briefs. Thank you, counsel. We'll hear a rebuttal. Thank you. Answering Judge Walker's question, at the joint appendix at 158, which is where it articulates the first cause of action, the procedural due process claim. Paragraph 110 says, as a direct and proximate result of being denied his constitutional right to be free from the deprivation of property without due process. What paragraph are you reading from? 110. 110? At JA 58. One, I'm sorry, 158. Plaintiff has suffered injuries and damages as set forth above. Paragraph 111, the unlawful conduct of the individual defendants with willful malicious, oppressive, or reckless, and was of such a nature that punitive damages should be imposed. So there is a specific request for punitive damages in what I would suggest reading the complaint fairly, second amendment complaint, a specific reference to compensatory damages. And what was the nature of the conduct on the part of the defendant that you say merits punitive damages? Uh, the brazen disregard for the rights protected under, by 75.3 of the civil service law, the baseless allegations. Even though, even though suspension is without pay is permitted under three. But it has to be following charges. Where, where is that? Sure, if you look at 75.3. Oh, where is it? Here it is. And again, it's, it's HHC rule 7.5.2. You look at subdivision three. Pending, the title is suspension pending determination of charges penalties. Pending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period of not exceeding 30 days. If that sentence, if that clause means anything, Judge Walker, is that you've got to have charges and then the suspension can take place. Judge Perez, if I may, to answer your question. It is very, it is not actionable what happened to the other similarly situated by national origin and religion pharmacists. But think of it this, it's clearly goes to the animus of, in this case, Dr. Faruqi. And so think of it this way. If a supervisor is animated by pick your impermissible animus, Jewish, Latino, sexual orientation, in this case, Pakistani, and starts picking off and firing each and every or multiple pharmacists, even if at different levels, and then takes adverse employment action against, in this case, Dr. Faruqi. That strikes me as something the court can rely upon in order to assess whether the minimal inference of discrimination that this court can, that references as the standard as articulated in Little John and Vega, it's certainly relevant evidence. I see I'm gone. There was one other thing I'd like to address. Can we wrap up briefly, please? On the issue of retaliation and whether the April letter, April 2019 letter, was submitted on behalf of Dr. Faruqi in their opposition papers. In Dr. Faruqi's, I'm sorry, Dr. Faruqi's opposition papers. The memo, page one. In January 2019, Dr. Faruqi, together with six other older Pakistani pharmacists, filed the formal internal EEO complaint. There's no dispute that January 2019. On April 30th, 2019, by letter from counsel, the pharmacists informed defendant, Eboni Carrington, of the discriminatory treatment. The pharmacists of which Dr. Faruqi is one. I am not going to stand here and say that the second amended complaint was the paradigm of clarity. It wasn't, in this respect. But the memo, page three, same thing. As noted above, on April 30th, 2019, counsel for the pharmacists sent a letter to defendant Carrington. Page 21, same thing. So Judge Furman knew, should have Dr. Faruqi's counsel been more specific? Of course. I wasn't involved below. I don't know why it wasn't. There was the mention of the oversight. But I think, again, reading the second amended complaint in a light, most fairly to Dr. Faruqi, you have a second protected activity, less than six, approximately six weeks from the suspension without pay, which everybody agrees in the retaliation context is an adverse employment action. And I think that claim should be reversed. The claims, all claims should be reversed. Thank you very much. Thank you, counsel. We'll take the case under advisement.